IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARISOL GALVEZ BLANCAS,

    Plaintiff,

vs.                                       Civ. No. 20-1283 KG/LF

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Defendant.

## MEMORANDUM OPINION AND ORDER

In this removed state lawsuit, Plaintiff Marisol Galvez Blancas seeks uninsured motorist coverage benefits arising from an automobile accident that occurred in March 2019 in Albuquerque, New Mexico. Giacinto Panetta allegedly drove in a negligent manner and rear-ended Plaintiff's vehicle causing her to suffer various injuries and damages. Panetta does not have automobile liability insurance coverage but Plaintiff has uninsured motorist coverage with Defendant State Farm Mutual Automobile Insurance Company. Defendant, however, has declined to provide Plaintiff with uninsured motorist coverage benefits to pay for damages caused by the March 2019 automobile accident.

On January 11, 2021, Plaintiff filed "Plaintiff's Motion to Remand to State Court" (Motion to Remand). (Doc. 7). The matter is now fully and timely briefed. *See* (Docs. 10, 12, and 13). Having considered the briefing, the Notice of Removal (Doc. 1), the Complaint for Personal Injuries and Uninsured Motorist Coverage Benefits (Complaint) (Doc. 1-2), the controlling law, and for the following reasons, the Court grants the Motion to Remand.

*I. Background*

   *A. Settlement Negotiations*

      *1. July 28, 2020, Letter to Defendant*

On July 28, 2020, prior to filing the Complaint in October 2020, Plaintiff's attorney presented Defendant with a demand for compensation under the uninsured motorist coverage. Plaintiff's attorney noted that the "vehicles suffered major damage in the collision and had to be towed from the scene." (Doc. 7) at 7. In addition, Plaintiff "was diagnosed as having suffered a severe cervical strain/sprain as well as a head injury with multiple abrasions and contusions." *Id.* at 7-8. Plaintiff's attorney stated that Plaintiff "was prescribed anti-inflammatory and pain medications as well as muscle relaxants and instructed to follow up with her Primary Care Physician." *Id.* at 8.

According to Plaintiff's attorney, between April 3, 2019, and September 9, 2019, Plaintiff was "experiencing severe neck pain with muscle spasms as well as post concussive headaches." *Id.* Plaintiff's attorney noted that Plaintiff's physician treated her with "pain and anti-inflammatory medications; muscle relaxants; chiropractic treatment; massage therapy; and acupuncture." *Id.*

Next, Plaintiff's attorney stated that Plaintiff "still has a significant amount of neck pain … as well as ongoing headaches for which [Plaintiff] continues to take pain and anti-inflammatory medications." *Id.* Plaintiff's attorney also stated that Plaintiff's physician informed Plaintiff "that there is really nothing further from a medical standpoint that can be done to treat [Plaintiff's] injuries, other than to continue to take pain and anti-inflammatory medications…." *Id.* According to Plaintiff's attorney, the physician concluded that Plaintiff "is just going to have to learn to live with her current level of symptoms which she likely to have for

2

the remainder of her life." *Id.* Plaintiff's attorney further stated that Plaintiff had incurred $18,295.10 in medical expenses to date but Plaintiff "is almost certain to require" future medical expenses. *Id.*

Finally, having stacked Plaintiff's uninsured motorist coverages, Plaintiff's attorney determined that Plaintiff has a total limit of $125,000 in uninsured motorist coverage. Plaintiff, thus, instructed her attorney to settle the lawsuit "for the available uninsured motorist limits of $125,000." *Id.*

### 2. August 31, 2020, Letter to Plaintiff's Attorney

In response to the July 28, 2020, demand letter, Defendant's claim specialist offered to settle the case for $25,000. *Id.* at 11.

### 3. September 3, 2020, Letter to Defendant's Claim Specialist

Plaintiff's attorney rejected the $25,000 offer of settlement stating that the offer would leave Plaintiff "owing money after she paid her attorney's fees and medical bills...." *Id.* at 17. Plaintiff's attorney then stated that Plaintiff authorized him to settle the lawsuit for $100,000. *Id.*

### 4. September 18, 2020, Letter to Plaintiff's Attorney

Defendant's claim specialist responded to the counter-demand of $100,000 by stating that Defendant would consider settling the case for $26,500. *Id.* at 15.

### 5. September 18, 2020, Letter to Defendant's Claim Specialist

Plaintiff's attorney rejected Defendant's offer to settle the case for $26,500. Instead, Plaintiff's attorney stated that Plaintiff authorized him to settle the case for $75,000, if Defendant increases its settlement offer to $45,000. *Id.* at 13.

Defendant rejected this last settlement demand so Plaintiff filed her Complaint in state court on October 27, 2020.

3

*B. The Complaint filed in the Second Judicial District Court, County of Bernalillo, State of New Mexico*

Plaintiff seeks a judgment against Defendant under her uninsured motorist coverage for the following compensatory damages and costs incurred as a result of Panetta's negligent actions.

Plaintiff asserts first that she "suffered physical injuries … and will incurr [sic] into the future medical and related expenses…." (Doc. 1-2) at 2, ¶ 5. Second, Plaintiff claims she "suffered mental, physical, emotional and psychological pain and suffering" and that she "will continue to experience such pain and suffering in the future…." *Id.* at 2, ¶ 6. Third, Plaintiff contends that she "suffered a loss of the value of household services…." *Id.* at 3, ¶ 8. Fourth, Plaintiff alleges she "suffered a loss of the value of the enjoyment of life and recreation," which she will suffer into the future. *Id.* at 3, ¶ 9. Finally, Plaintiff maintains she "suffered a loss of earnings and will continue to suffer a loss of earnings…." *Id.* at 3, ¶ 10. Plaintiff states that the amount of these damages is "not presently determinable but to be proven at the time of trial." *Id.* at 2-3, ¶¶ 5, 6, 8, 9, and 10.

In addition to the above compensatory damages, Plaintiff seeks both pre-judgment and post-judgment interest, "attorney's fees as allowed by law," and "reasonable costs." *Id.* at 4.

*C. The Notice of Removal*

Defendant subsequently removed Plaintiff's state lawsuit to federal court on the basis of diversity jurisdiction. *See* (Doc. 1). In addition to alleging diversity of citizenship, Defendant alleges in the Notice of Removal that "Plaintiff has made a demand for settlement in the amount of $75,000.00 in insurance benefits." *Id.* at 3, ¶ 18. Defendant also notes that Plaintiff contends she "suffered physical injuries, past and present medical expenses, pain and suffering, loss of household services, loss of the value of enjoyment of life and recreation, and loss of earnings."

4

*Id.* at ¶ 19. Moreover, Defendant notes that Plaintiff seeks "pre-judgment and post judgment interests" as well as "reasonable costs and attorney fees." *Id.* at ¶¶ 20-21.

*II. The Motion to Remand*

Plaintiff argues that this Court does not have diversity jurisdiction and, therefore, a remand is appropriate. Plaintiff specifically asserts that Defendant has not demonstrated that the $75,000 amount in controversy requirement for diversity jurisdiction is met in this case.[1] Defendant opposes the Motion to Remand.

*III. Diversity Jurisdiction Law*

A federal court has diversity jurisdiction in suits between "citizens of different states" when the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). As the party invoking the Court's jurisdiction, Defendant "bear[s] the burden of establishing that the requirements for the exercise of diversity jurisdiction are present." *See Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001) *abrogated on other grounds by Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014). At the same time, the Court recognizes that there is a presumption against removal jurisdiction. *See Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp.*, 149 Fed. Appx. 775, 778 (10th Cir. 2005) *abrogated on other grounds by Dart Cherokee Basin Operating Co., LLC*, 574 U.S. 81 (explaining that "[g]iven the limited scope of federal jurisdiction, there is a presumption against removal, and courts must deny such jurisdiction if not affirmatively apparent on the record").

The amount in controversy is an "estimate of the amount that will be put at issue in the course of the litigation." *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008). In a removal, "the sum demanded in good faith in the initial pleading shall be deemed to be the

---

[1] Plaintiff does not dispute that diversity of citizenship exists. *See* (Doc. 1) at 2-3, ¶¶ 12-15.

amount in controversy...." 28 U.S.C. § 1446(c)(2). However, "if the initial pleading seeks ... a money judgment, but the State practice ... does not permit demand for a specific sum," as in this case, "the notice of removal may assert the amount in controversy...." *Id.* at § 1446(c)(2)(A)(ii).

"[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Dart Cherokee Basin Operating Co., LLC*, 574 U.S. at 89. Such evidence can include "contentions, interrogatories or admissions in state court," "calculation from the complaint's allegations," "reference to the plaintiff's informal estimates or settlement demands," or other evidence, like affidavits. *McPhail,* 529 F.3d at 954 (citation omitted).

When evidence is needed to establish the amount in controversy, "the defendant is required to prove jurisdictional facts by a 'preponderance of the evidence' such that the amount in controversy may exceed $75,000." *Id.* at 953. Once the defendant provides evidence of an amount in controversy that exceeds $75,000, "the case stays in federal court unless it is legally certain that the controversy is worth less than" $75,000. *Id.* at 954 (citation omitted).

*IV. Discussion: Whether the Amount in Controversy Exceeds $75,000*

First, Plaintiff contends that Defendant should not consider her request for an award of attorney's fees in determining that the amount in controversy exceeds $75,000.[2] Second, Plaintiff contends that on September 18, 2020, Plaintiff made clear to Defendant in a counter-

---

[2] The Court notes that

Plaintiff has informed counsel for the Defendant that Plaintiff is willing to file a First Amended Compliant [sic] in which she removes her claim for attorney's fees with the understanding that if facts develop during the course of discovery which would allow the Plaintiff to recover her attorney's fees that the Plaintiff would be allowed to file an Amended Complaint.

(Doc. 7) at 2, ¶ 4.

demand that she "was seeking recovery in the range of $45,000.00 to $75,000.00, but clearly not in an amount in excess of $75,000.00." (Doc. 7) at 3, ¶ 15.

*A. Attorney's Fees*

"Attorneys' fees may be included in the amount in controversy for purposes of satisfying the jurisdictional requirement where such fees are provided by statute or contract." *Taylor v. O'Connor*, 2011 WL 13289687, at *2 (D.N.M). "In a diversity case, attorney fees are determined pursuant to the forum state's law." *Sw. Stainless, L.P. v. Sappington*, 2010 WL 1486935, at *4 n.6 (N.D. Okla.) (citing *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1435 (10th Cir. 1993)). Here, New Mexico is the forum state.

"New Mexico adheres to the so-called American rule that, absent statutory or other authority, litigants are responsible for their own attorney's fees." *Montoya v. Villa Linda Mall, Ltd.*, 1990-NMSC-053, ¶ 6, 110 N.M. 128; *see also Dawley v. La Puerta Architectural Antiques, Inc.*, 2003-NMCA-029, ¶ 43, 133 N.M. 389 (citing New Mexico Supreme Court case "reaffirming that New Mexico follows the American rule, which does not ordinarily allow the recovery of attorney fees"). In this case, Defendant has not identified any statute, contract provision, or other authority that allows Plaintiff to recover attorney's fees in this lawsuit. Accordingly, the American Rule applies in this case and Plaintiff is responsible for her attorney's fees. Given this situation, Defendant cannot consider Plaintiff's request for attorney's fees in determining the amount in controversy.[3]

---

[3] The Court notes that Plaintiff's request for pre-judgment and post-judgment interest, and costs, "are not included in calculating the amount in controversy." *Wahlenmaier v. Allstate Indem. Co.*, at *2 n.1 (N.D. Tex.) (citing 28 U.S.C. § 1332 which "require[s] that the amount in controversy exceed '$75,000, *exclusive of interest and costs*'" (emphasis added)).

7

*B. Settlement Demands and Offers*

Defendant characterizes Plaintiff's September 18, 2020, counter-demand, in which Plaintiff states she will settle the case for $75,000 if Defendant raises its settlement offer to $45,000, as a "conditional" settlement demand. Defendant argues that the conditional settlement demand did not go into effect prior to the filing of the Notice of Removal because "Defendant did not agree to increase its settlement offer to $45,000.00." (Doc. 10) at 4. Consequently, Defendant concludes that Plaintiff's $100,000 counter-demand was in effect at the time Defendant filed the Notice of Removal. Defendant further notes that the conditional settlement demand "is not tantamount to a stipulation that any damages awarded would be limited to $75,000.00 or less." *Id.* at 5. Also, Defendant argues that "Plaintiff cites no authority suggesting that a defendant's settlement offer, as opposed to a plaintiff's settlement offer, is dispositive as to the amount in controversy." *Id.* Finally, Defendant asserts that the allegations in the Complaint and Plaintiff's initial demand letter allege "several serious injuries, a lengthy duration of medical treatment, extensive pain and suffering, and $18,295.10 in incurred medical expenses." *Id.* at 6. Defendant contends that those allegations do not show that "it is legally certain that less than $75,000.00 is at stake." *Id.* at 6.

To begin with, the fact that Defendant did not agree to the conditional settlement demand is of no consequence in determining the amount in controversy. "Whether the settlement offer constitutes a binding contract is a separate and distinct issue from whether the ... settlement offer satisfies the amount in controversy requirement." *Roehm v. Ford Motor Co.*, 2018 WL 4520542, at *2 (S.D. Cal.).

Indeed, in the Tenth Circuit, "a plaintiff's proposed settlement amount 'is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the

8

plaintiff's claim.'" *McPhail*, 529 F.3d at 956 (citation omitted). While "[t]he amount in controversy is not proof of the amount the plaintiff will recover ..., it is an estimate of the amount that will be put at issue in the course of the litigation." *Id.* Accordingly, a plaintiff's proposed settlement amount reflecting "plaintiff's own estimation of its claim are a proper means of supporting the allegations in the notice of removal, even though they cannot be used to support the ultimate amount of liability." *Id.* Notably, this Tenth Circuit law does not refer to a defendant's proposed settlement amount as relevant evidence of the amount in controversy. *See Rael v. GEICO Gen. Ins. Co.*, 2017 WL 3051953, at *4 (D.N.M.) (noting that "[w]hile a defendant's offer might be relevant to determining the low end of money at play, a plaintiff's offer, and the facts associated with it, is more determinative of the upper end of money at play"). The Court, therefore, will focus on Plaintiff's settlement demands to help determine the amount in controversy.

As an initial matter, the Court recognizes that settlement negotiations asking for policy limits and other unreasonably high amounts "reflect puffing and posturing" as would a "pre-suit demand letter." *Cati v. Coulson*, 2020 WL 7396411, at *1 (M.D. Fla.); *see also Silva Rocha v. GEICO Gen. Ins. Co.*, 2021 WL 672701, at *2 (M.D. Fla.) (stating that "demand letters do not automatically establish the amount in controversy"); *Fitzpatrick v. Dufford*, 2006 WL 839513, at *4 (N.D.W. Va.) (holding that "Court is not persuaded by MMIC's argument regarding policy limits because jurisdiction must be based on the actual amount in controversy, not the defendants' exposure under the terms of its contract"); *Varela v. Wal-Mart Stores, E., Inc.*, 86 F. Supp. 2d 1109, 1112 (D.N.M. 2000) (noting that "[i]nitial settlement offers are generally inflated, not deflated").

9

Clearly, the initial demand letter seeking the uninsured motorist coverage limits of $125,000 represents the "puffing and posturing" one expects in an insurance benefits case like this case. Hence, the $125,000 demand is not a reasonable estimate of Plaintiff's claim. That leaves Plaintiff's $100,000 counter-demand and the conditional settlement demand of between $45,000 and $75,000. Defendant argues that the $100,000 counter-demand reasonably reflects the amount in controversy because Plaintiff cannot demonstrate with legal certainty that the amount in controversy is less than $75,000.

At the outset, the Court notes that Defendant, not Plaintiff, has the initial burden of proving by a preponderance of the evidence jurisdictional facts that demonstrate the amount in controversy exceeds $75,000. Defendant argues that the amount in controversy exceeds $75,000 due to the nature of Plaintiff's injuries, lengthy medical treatment, pain and suffering, and $18,295.10 in past medical expenses.

The only concrete non-speculative damages in this case is the past medical expenses of $18,295.10. Defendant fails to provide any "underlying facts to establish what the amount of" future medical expenses and pain and suffering might be. *Varela*, 86 F. Supp. 2d at 1112; *see also Cati*, 2020 WL 7396411 at *2 (finding that damages based on "future medical expenses, or pain and suffering are too speculative to include in the Court's calculation" of amount in controversy); *Fitzpatrick*, 2006 WL 839513, at *4 (stating that "defendants' removal cannot be based on speculation"). Defendant also does not provide any underlying facts to show the value of the alleged loss of household services, loss of enjoyment of life and recreation, and loss of earnings. *See Cati*, 2020 WL 7396411 at *2 (finding that damages based on "future loss of income [is] too speculative to include in the Court's calculation" of amount in controversy; *Varela*, 86 F. Supp. 2d at 1112 (finding that "Defendant provides the court with *no* underlying

facts to establish what the amount of" damages might be for "assistance with activities of daily living" and "loss of enjoyment of life").

Even so, the Court notes that the initial demand letter states that Plaintiff "still [had] significant amount of neck pain … as well as ongoing headaches for which [she] continues to take pain and anti-inflammatory medications" and that Plaintiff "is likely to have [these symptoms] for the remainder of her life." (Doc. 7) at 8. However, as indicated above, initial demand letters, like this one, typically "reflect puffing and posturing." *Cati*, 2020 WL 7396411 at *2. As such, Defendant cannot reasonably trust that Plaintiff's initial demand letter accurately indicates an amount in controversy exceeding $75,000. Aside from the possibly overstated initial demand letter, there is no reliable evidence that the nature of Plaintiff's injuries and medical treatment would produce damages exceeding $75,000. In sum, Defendant has failed to show by a preponderance of the evidence that Plaintiff's unspecified damages and the $18,295.10 in past medical expenses, together, exceed $75,000.

Finally, the Court addresses Defendant's observation that Plaintiff did not stipulate that she would limit damages to $75,000. When a defendant asks why a plaintiff "won't stipulate to a $75,000 damage limitation," the "[d]efendant essentially asks the Court to shift the burden to [p]laintiff by establishing a rule whereby a plaintiff must stipulate that her damages are less than the jurisdictional amount in order to avoid removal to federal court." *Varela*, 86 F. Supp. 2d at 1112. "Because [p]laintiff is the master of [the] lawsuit, the Court declines to draw any negative inference from her refusal to stipulate to a cap on damages in the absence of any proof that her claims exceed the required amount in controversy." *Id.* Considering Defendant has not provided evidence that Plaintiff's claims exceed $75,000, the Court will not take into account Plaintiff's

11

failure to stipulate to an amount in controversy less than $75,000 in determining the amount in controversy.

*C. Conclusion*

For the foregoing reasons, the Court determines that Defendant has not shown by a preponderance of the evidence that this case exceeds the $75,000 amount in controversy required for diversity jurisdiction. Given this determination and the presumption against removal jurisdiction, the Court grants the Motion to Remand.

IT IS ORDERED that

1. Plaintiff's Motion to Remand to State Court (Doc. 7) is granted; and

2. this case will be remanded to the Second Judicial District Court, Bernalillo County, State of New Mexico.

_____
UNITED STATES DISTRICT JUDGE